

4705 Somers Avenue, Suite 100
North Little Rock, AR 72116
501-791-2277

**Tab Turner**
tab@tturner.com

**TURNER & ASSOCIATES, P.A.**
Attorneys at Law

May 10, 2018

**VIA ECF FILING**

The Honorable J. Leon Holmes
UNITED STATES DISTRICT JUDGE
500 West Capitol Avenue, Room D469
Little Rock, AR 72201

      Re:    Stovall v. Mack Trucks, et al
                Case # 4:16-CV-00713

Dear Judge Holmes:

      We represent Plaintiff in the above-captioned lawsuit. Our schedule currently requires the completion of all discovery by August 6, 2018. The parties have addressed a proposed revision to the scheduling order that allows additional time for discovery, but all agree that if the other deadliness imposed by the Court are to be complied with, time is of the essence.

      We've run into several discovery-related disputes that we need the Court's assistance in resolving. Given the tight timing we have before us, we are accepting the Court's invitation to ask for help so we don't jeopardize the present schedule. We have all worked together in good faith to try and resolve the disputes, but our efforts have been unsuccessful.

      We have three (3) issues. First, Plaintiff and Indiana Mills Manufacturing, Inc. ("IMMI") have a dispute about the scope of upcoming depositions scheduled for May 31 – June 1, 2018. Second, Plaintiff and Mack Trucks ("Mack") have a potential dispute over the scope of depositions scheduled for May 16-17, 2018, but because Mack has not yet confirmed that it will be objecting to any topic, Plaintiff's effort to obtain full and complete depositions cannot be assured. It would be our preference to resolve all disputes without losing the quickly approaching deposition dates. Lastly, we have a timing problem relating to removal of the safety belt from the accident-involved. Each issue is very briefly summarized below.

1

**ISSUE #1     DISPUTE OVER SCOPE OF IMMI DEPOSITIONS SCHEDULED FOR May 31-June 1, 2018.**

On March 28-29, 2018, Plaintiff took the deposition of IMMI's corporate representative on the topics shown in Attachment 01 (Notice of Deposition). After the deposition was completed, Plaintiff requested additional follow-up corporate representative testimony on the topics shown in Attachment 02 (Notice of Deposition). The second set of depositions seek IMMI's testimony about very specific details relating to advanced occupant protection technologies (air bags, pretensioners, and Roll-tek technology), which were <u>not</u> incorporated as part of the design of the subject safety belt system.

Of the 6 topics requested in Attachment 02, IMMI has raised objection as to Topics 1, 2 and 6, claiming that the requested testimony is "duplicative" of a prior topic from Attachment 01, and, specifically, claiming that the topics were covered by Topic 5 (b) of Attachment 01 (the first deposition) wherein it asked that the representative be prepared to identify "[A]ny alternative design choices considered, but rejected" with respect to the subject truck.

A comparison of the topics from each notice (Attachment 01 v. 02) seems to quite clearly show the topics in Attachment 02 to be different. Nevertheless, IMMI's representative at the deposition had only general knowledge on airbags, pretensioners, and Roll-tek, but readily admitted his inability to provide specific details regarding the underlying technologies in connection with the subject occupant protection system.

Attachment 03 is a copy of the deposition of the IMMI representative. We have highlighted the portions of the transcript (pages 16:20-17:19, 59:4-25, 65:1-66:1, 83:17-84:13, 88:11-90:24, 92:7-11, 102:9-16, 103:25-104:16) we believe supports our conclusion, along with Exhibit 10 at the deposition, which directly relates to the technologies and which IMMI's representative admitted that he had neither seen nor even read prior to the deposition despite the fact that the presentation (Ex. 10) was a presentation made by IMMI to Mack in the late 1990s. This latter point is significant because it alone shows that the witness was not anticipating the scope of the questions covered by the follow-up topics now requested in the second notice of deposition, nor was he obviously prepared to speak for the corporation's knowledge about the details associated with the technologies.

Turning to a direct comparison of the topics, the first notice of deposition included a reference to alternative safer designs, but was limited as follows:

> 5. The corporate representative designated to speak for the corporation about the safety belt system provided for the

2

driver seating position in the subject truck. "Safety belt system" in this context is intended to mean the retractor, webbing, buckle, attachment hardware, and all individual components incorporated into the system. For purposes of this deposition, the witness should be prepared to speak to the corporation's knowledge about the following subtopics:

b. Any alternative design choices considered, but rejected; changes to the design over time; the reasons for such changes; and what testing or computer aided design tools were used to evaluate, study, or measure performance of the design in foreseeable operation, and

d. Discussions with Mack and/or Volvo about the availability and benefits of the alternative designs.

The second notice of deposition requests a much different subset of information pertaining to alternative safer designs, and is phrased as follows:

1. Driver airbag development and use for large commercial trucks from 1994 to 2013. The witness should be prepared to discuss the corporation's knowledge about the following:

    a. Driver airbag systems offered by IMMI to manufactures of large commercial trucks during the stated timeframe, including each design available; when each was designed; when each was available for implementation; when each was offered to customers; which designs were used by what customers in what model year and type trucks.

    b. IMMI's testing of airbag systems in large commercial trucks, including what was done; when; why; who was involved; and the results and all documentation of the testing.

    c. IMMI's supplying of driver airbag systems to Volvo or Mack, including what was provided; when; what model years and type trucks; who was involved; what systems were used.

    d. IMMI's experience and knowledge with the effectiveness of driver airbags in saving lives or reducing injuries in frontal-type accidents.

3

    e. IMMI's marketing materials supplied to customers like Volvo and Mack showing or discussing the availability of driver airbags for commercial trucks.

    f. Communications between IMMI and Volvo and/or Mack about the use of driver side airbags.

2. Pretensioners. The witness should be prepared to discuss the corporation's knowledge about the following during the time period 1994 to 2013:

    a. IMMI's design of pretensioners for use in large commercial truck applications, with or without suspension seats, including when the systems were designed; who was involved; what designs were created; when each was designed and developed; the testing done to prove out the concept; when each was implementation ready; and what systems were used by what customers in what vehicle applications (makes and models).

    b. IMMI's testing of pretensioners for use in large commercial trucks, including what was done; when; why; who was involved; and the results and all documentation of the testing.

    c. IMMI's supplying of pretensioners to Volvo or Mack, including what was provided; when; what model years and type trucks; who was involved; what systems were used.

    d. IMMI's experience and knowledge with the effectiveness of pretensioners in saving lives or reducing injuries in frontal-type accidents.

    e. IMMI's marketing materials supplied to customers like Volvo and Mack showing or discussing the availability of pretensioners for commercial trucks.

    f. Communications between IMMI and Volvo and/or Mack about the use of pretensioners.

6. RollTek technology, including what it is; how it was developed; the evolution of the design process; who was involved; the goals of the technology; when it was designed; who was involved; when it was implantation available in any from or fashion, including versions that preceded to name "RollTek"; and what vehicles

4

between 1996 and the present incorporated the technology into trucks, by make and model year.

With regard to IMMI's objection, it is important to note that IMMI is <u>not</u> alleging that the information was <u>already obtained</u>, but rather IMMI is objecting because it claims the information "<u>should have been</u>" obtained in the first deposition. IMMI's position is unreasonable in our view because the topics quite clearly seek different corporate representative testimony; Plaintiff had no way of knowing what IMMI "expected" in the first deposition; and the witness clearly was not prepared to share the necessary information even if it was contemplated, which it was not.

Lastly, the information sought is <u>not</u> duplicative and, under Arkansas law, is highly relevant and important to the expert witnesses analyzing the defect issues. The subject of the discovery is safer alternative design evidence. Although Arkansas law does <u>not require</u> a plaintiff to bear the burden of proving the existence of an alternative safer design that was both available and feasible in terms of cost, practicality and technological feasibility, the Eighth Circuit has recognized that such evidence is a factor that may be considered by the jury in determining whether a product was supplied in a defective condition that rendered it unreasonably dangerous. See, e.g., *French v. Grove Manufacturing Company*, 656 F.2d 295 (8th Cir. 1981). Consequently, it is quite clear under Arkansas law that the discovery sought goes to the heart of the product defect issues involved in the litigation.

**ISSUE #2    DISPUTE OVER SCOPE OF MACK DEPOSITIONS SCHEDULED FOR MAY 16-17, 2018.**

Issue #2 is more difficult to address because the dispute surrounds a form of preemptive problem rather than a real problem at this time. Here is why it is deemed "preemptive" and why we seek the Court's guidance.

On February 28, 2018 (now over 60 days ago), Plaintiff provided Mack with a list of topics for corporate representative testimony, which included 12 topics, and first requested dates for the depositions. On April 17 and 20, 2018 (~20 days ago), Plaintiff asked Mack to add six (6) additional topics. The February request is attached as Attachment 04 and the April request is attached as Attachment 05. The depositions are currently scheduled to take place on May 16-17, 2018, in Philadelphia, which is next week.

Although Plaintiff has informed that objections "are coming", none have been received to date, yet the depositions are three (3) working days from today. If objections, if any, are not resolved this week, we are likely looking at either (a) having to reschedule the depositions thus jeopardizing trial preparation and our current schedule or (b) risk having to make two trips to Philadelphia: one next week and one after the Court rules on

5

specific objections. Consequently, we raise this issue for discussion in the context of disputes without having specifics to address. Plaintiff has attempted on four (4) separate occasions to ask Mack to please identify any objections it may have, but our requests have not been met with cooperation.

### ISSUE #3      DISPUTE OVER SEATBELT REMOVAL.

The final disputed issue likewise relates to timing. Approximately six (6) weeks ago, Plaintiff advised all defendants that we desired to remove the driver's safety belt from the subject Mack truck for non-destructive examination at the laboratory. An offer was made for defendants to either attend or we would videotape the removal. We also provided a detailed protocol we would follow that, once agreed upon, would be submitted to the Court for approval.

We are now six (6) weeks down the road and the belt has still not been removed because the defendants desired to be present for the removal, which we originally agreed to accommodate. However, we received no cooperation in getting it scheduled in the past five (5) weeks, and we are now at the point where if we do not remove the belt by tomorrow, our key experts will not be in a position to conduct the necessary work next week in order to meet the expert disclosure deadlines because the key expert has two (2) trials in June and a two-week family trip planned for early July. Plaintiff agreed to accommodate defendants by rescheduling the removal to 16 May 2018. However, if we make that move to accommodate, it will be necessary to move the expert disclosure dates back 3-4 weeks in order to permit Plaintiff's experts to conduct the work necessary to be prepared. Although we have attempted to reach this compromise, no such compromise has been agreed upon. That puts the Plaintiff in a difficult situation in terms of scheduling. Consequently, we are asking that we either (a) be permitted to press forward with the removal tomorrow and leave the schedule untouched or (b) move the removal to 16 May while modifying the expert disclosure date.

In closing, we have provided this letter as per the Court's suggestion from last fall with regard to resolution of disputes. If the Court prefers that we submit these issues by way of motion rather than letter, we are more than glad to comply. However, as set forth above, virtually any disruption of the schedule, especially the deposition and belt removal schedule, at this point will jeopardize the ability to meet the Court's scheduling order.

Thank you in advance for your consideration of these issues.

Sincerely,

Tab Turner

cc.    Charles Reed
       Frank Brannen
       Edwin Lowther
       Jim Simpson
       Martin Kasten
       Matthew King
       Jennifer Schuster
       Randall Riggs
       Ray Baxter

7