

**TURNER & ASSOCIATES, P.A.**
Attorneys at Law

4705 Somers Avenue, Suite 100
North Little Rock, AR 72116
501-791-2277

**Tab Turner**
tab@tturner.com

October 2, 2018

**VIA ECF FILING**

Honorable J. Leon Holmes
**UNITED STATES DISTRICT JUDGE**
500 West Capitol Avenue, Room D469
Little Rock, AR 72201

   Re: **Stovall v. Mack Trucks, et al**
      **Case # 4:16-CV-00713**

Dear Judge Holmes:

  We represent Mr. Stovall. The purpose of my letter is to respond to Mr. Lowther's letter of October 1, 2018, regarding Mack Truck's request that the Court compel the deposition of Meghan Tadlock who is presently confined in the Nevada County Jail on first degree murder charges. Ms. Tadlock is Mr. Stovall's ex-wife. In short, we are confused by the letter from a procedural standpoint, but we also believe Ms. Tadlock's deposition is not a reasonable request given that she and Mr. Stovall were separated more than a year before the subject accident occurred and she has no information that could possibly be relevant to the accident, Mr. Stovall's injuries, or his future condition. We specifically asked the defendants to articulate why the deposition was felt necessary. The only response we received was the letter from Mr. Lowther to you.

  From a procedural standpoint, we are unclear as to the procedural mechanism Mack seeks with use of its letter. Ordinarily, a subpoena is issued to compel a witness to attend a deposition. Failure of the witness to comply with the subpoena results in a contempt motion. To the extent Mack is seeking relief for contempt resulting from the first cancelled deposition, we would like to point out that the issuing authority was Federal District Court for the Eastern District of Arkansas. The Western District, however, would need to transfer the issue to this Court before Mack's proposed resolution is even considered. See Fed. R. Civ. P. 45(g). If there is some other basis or authority Mack relies on, we apparently missed it.

Substantively, the present dispute concerns the proper scope of discovery. Unless otherwise limited by court order, . . . [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense <u>and proportional to the needs of the case</u>, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Vallejo v. Amgen, Inc.*, No. 17-1730, at * (8th Cir. Sep. 10, 2018). The district court has the power and responsibility to consider the proportionality of all discovery and consider proportionality in resolving discovery disputes. *Vallejo v. Amgen, Inc.*, No. 17-1730, at * (8th Cir. Sep. 10, 2018). Although prior to the proportionality addition to Rule 26, Rule 26 was viewed by the Eighth Circuit as "Liberal in scope and interpretation, extending to those matters which are relevant and reasonably calculated to lead to the discovery of admissible evidence," even the Eighth Circuit recognized that the Rule "should not be misapplied so as to allow fishing expeditions in discovery." *Hofer v. Mack Trucks, Inc.,* 981 F.2d 377, 380 (8th Cir.1992) (emphasis added).

Here, the issue presented is whether the defendants taking of a deposition of an ex-wife who was estranged from Plaintiff for more than a year before the subject accident is so important to the issues in the litigation or whether the burden or expense of the proposed discovery outweighs any likely benefit. We respectfully disagree with defendants and think this is nothing more than a fishing expedition aimed to trying to imply that Plaintiff must be a bad person simply because he ex-wife is in prison for murder.

First, the importance the defendants prescribe to Ms. Tadlock's deposition has been greatly exaggerated, if not completely mischaracterized. The couple married in March, 2012, and have three children. They split-up in March, 2014. The subject accident occurred fourteen (14) months later in June, 2015. Ms. Tadlock is currently incarcerated because it is alleged that in May, 2017, three (3) years after she and Mr. Stovall split and two (2) years after the subject accident, she and an accomplice tied a drug dealer up and Ms. Tadlock murdered the drug dealer when she shot him in the head.

Ms. Tadlock is obviously not a percipient witness to Mr. Stovall's daily activities or habits at the time of the accident because she was not even residing with him nor had she been for fourteen (14) months. In fact, Mr. Stovall was actually living with a young lady named Jaqueline Weston at the time of the accident, who defendants <u>have</u> fully deposed. Every issue Mr. Lowther identified wanting to ask Ms. Tadlock about is more appropriately answered by the person living with Mr. Stovall at the time of the accident, and Ms. Weston's deposition has already occurred. Although the defendants may not be happy with the testimony, that certainly does not create a right to waste time, money and

resources going on a fishing expedition with someone who was neither living with Mr. Stovall at the time of the accident or involved in his daily life for well over a year.[1]

In an effort to create fire where none exists, Mack next tries to use a medical record to create an impression different from the truth by making a specious argument that Mr. Stovall might have been "sleepy" while driving. The record Mack references is from a nurse practitioner note made by Erin Holliman who, during an isolated visit on May 3, 2013, which his more than two years <u>before</u> the subject accident, made a passing entry about Mr. Stovall being sleepy. What Mack doesn't mention is that Ms. Holliman saw Mr. Stovall ten additional times after May 3, 2013, and never once noted any complaint of him again being sleepy or tired.[2] Even more importantly, rather than speculating about what was meant by the note, his girlfriend, Ms. Weston, made clear in her deposition that Mr. Stovall did <u>not</u> have a problem sleeping at night or being sleepy during the day time[3], and Ms. Holliman made clear in her deposition that any implication that her note supports the proposition that he somehow fell asleep driving several years later was nothing more than pure speculation.[4]

Simply put, Ms. Tadlock's deposition is nothing more than a fishing expedition where the burden or expense of the proposed discovery outweighs any likely benefit to be gained.[5]

Turning to the practical elements of the proportionality consideration, Ms. Tadlock's criminal trial is scheduled for March, 2019. No defense lawyer in his or her right mind is going to permit his or her client to subject herself to a deposition without invoking her Fifth Amendment rights. Although that does not mean that one might not get some answers to questions unrelated to her present predicament, taking a full and open deposition that includes background questions, credibility questions, and a full cross-examination is certainly not going to be permitted. Consequently, the deposition is not going to be practical even if permitted to proceed, and it certainly weighs against permitting the deposition given the its nothing more than a fishing expedition to begin with.

---

[1] Ms. Weston testified that she lived with Mr. Stovall from late July, 2014, until his accident on June 1, 2015. See Weston Depo P. 7. Ms. Weston also testified that Mr. Stovall slept well; did not suffer from problems during the day with sleep deprivation; and it was his habit to put his seatbelt on whenever he entered an automobile. See Id. P. 14-15 and 19. She also confirmed that Mr. Stovall would get upset at Ms. Weston if she ever forgot to use her seatbelt. Id. at 19.

[2] See Holliman Depo 24:1-12.

[3] See Weston Depo, P. 14-15.

[4] See Holliman Depo 26:1-22.

[5] The Eighth Circuit has held that, despite Rule 26 being "liberal in scope and interpretation, extending to those matters which are relevant and reasonably calculated to lead to the discovery of admissible evidence," it "should not be misapplied so as to allow **fishing expeditions** in discovery." *Hofer v. Mack Trucks, Inc.,* 981 F.2d 377, 380 (8th Cir.1992) (emphasis added).

  Although Mack would naturally agree to limit scope of Ms. Tadlock's deposition, limiting the scope realistically means that cross-examination will be limited for the very reasons set forth above, which means Mr. Stovall would be deprived of a full and fair opportunity to depose the witness on credibility and bias-related issues, not to mention the natural resentment an ex-wife might have whether incarcerated for murder or not.

  In conclusion, Plaintiff objects to both the procedural nature of the request and to the substantive request.

  Thank you for the Court's time and patience.

            Sincerely,

            /TAB TURNER/
            Tab Turner

cc. Charles Reed
   Frank Brannen
   Edwin Lowther
   Jim Simpson
   Martin Kasten
   Matthew King
   Jennifer Schuster
   Randall Riggs
   Ray Baxter