IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

BURRIS RICHARD STOVALL, Administrator
of the Estate of RICHARD JOSHUA STOVALL,
Deceased                                                                                          PLAINTIFF

vs.                              CASE NO.: 4:16-cv-00713-JM

MACK TRUCKS, INC., and INDIANA MILLS
& MANUFACTURING, INC.                                                                DEFENDANTS

### MACK TRUCKS, INC.'S MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERT SRI KUMAR AND BRIEF IN SUPPORT

COMES NOW Defendant Mack Trucks, Inc. ("Mack"), by and through its undersigned counsel, and files this Motion to Exclude Testimony of Plaintiff's Expert Sri Kumar, showing the Court as follows:

### I.   INTRODUCTION

The opinions of Plaintiff's biomechanical expert, Sri Kumar, suffer from unsupported methodology and should be excluded under Federal Rule of Evidence 702. Kumar's opinions pertaining to occupant kinematics violate Newtonian physics, and his biomechanical assessment of the proposed alternative designs lacks any investigation into whether the designs would have made a difference for Mr. Stovall. Instead, Kumar hides behind what he calls a "systems approach" to assessing the alternative designs, through which he contends that because he is evaluating the interaction of all the proposed new designs, he does not need to assess how any of the individual designs would have performed in the Stovall crash. With no showing that any other biomechanical engineer undertakes this methodology, ultimately, Kumar's conclusion is merely impermissible *ipse dixit*. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in

1

either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").

## II.   SRI KUMAR'S OPINIONS

Sri Kumar was retained, in his own words, "to answer scientific questions involving the identity and nature of the traumatic injuries suffered by Mr. Stovall, occupant kinematics, which provide a scientific basis for determining the mechanism of catastrophic injuries, and the biomechanical injury causation and/or the prevention of such injuries in a crash as presented."[1] Kumar's opinions at issue in this motion are:

- "The collapsing roof structure compromised the diver's survival space and impacted Mr. Stovall's head/face area, and the failure of seat belt system coupled with a lack of an airbag system failed to restrain the upper body and further allowed Mr. Stovall to impact the stiff steering wheel resulting in serious head/facial injuries."

- "Had the cab roof structure been stronger and maintained the occupant survival space as noted by Mr. Herbst, and appropriate seat belt restraint been available with the airbag as discussed by Mr. Meyer, the driver would not have sustained serious facial/head injuries in this accident."

Essentially, Kumar opines that if the vehicle had incorporated all the alternative designs proposed by Plaintiff's other experts simultaneously, Mr. Stovall would not have sustained the injuries that he did in the crash.

## III.   ARGUMENT AND CITATION TO AUTHORITY

**A. Legal Standard.**

Federal Rule of Evidence 702 governs the admissibility of expert testimony and has "three distinct but related requirements: (1) the evidence must be based on scientific, technical or other specialized knowledge that is useful to the finder of fact in deciding the ultimate issue of fact; (2)

---

[1] Kumar Expert Report at 2, attached as Exhibit A.

the witness must have sufficient expertise to assist the trier of fact; and (3) the evidence must be reliable or trustworthy." *Kudabeck v. Kroger Co.*, 338 F.3d 856, 859 (8th Cir. 2003). When faced with a proffer of expert testimony, trial judges are charged with the "gatekeeping" responsibility of ensuring that all expert evidence admitted is both relevant and reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999); *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589, (1993); *United States v. Wintermute*, 443 F.3d 993, 1000 (8th Cir. 2006).

The court must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*. at 592-593. "In sum, the district court's gatekeeping role separates expert opinion evidence based on "good grounds" from subjective speculation that masquerades as scientific knowledge." *Glastetter v. Novartis Pharms. Corp.*, 252 F.3d 986, 988-89 (8th Cir. 2001).

**B. Kumar's Opinions Should Be Excluded Because They Violate Newton's Third Law of Motion.**

Kumar's occupant kinematics opinions should be excluded because they violate Newton's Third Law of Motion. As taught in thousands of high schools in this country every year: for every action, there is an equal and opposite reaction. *The Mathematical Principles of Natural Philosophy*, Sir Isaac Newton, 1687. Here, Kumar has concluded that the rearward movement of the structure of the truck cab somehow caused Mr. Stovall's head to be pushed forward. But if the structure is moving rearward, as Sir Isaac instructs, Mr. Stovall's head also must move rearward in response to being struck by the rearward moving structure. Kumar offers no justification for why it is proper methodology to violate one of the basic principles of physics in developing his occupant kinematics theory in this case.

Specifically, Kumar opines that Mr. Stovall's significant skull fractures were caused, in part, through his head striking the steering wheel.[2] He has concluded that one of the forces that caused Mr. Stovall's head to move forward was the header/A-pillar part of the roof structure on the driver's side of the truck crushing into his upper left front of his head.[3] Kumar explained:

```
24  Q   What force is causing his body to go towards the
25      stiff steel steering wheel?
 1  A   There are a couple of forces acting on his body. One
 2      is the vehicle roof structure, the side header when it hit his
 3      body -- I mean on the head -- that's one force. The second
 4      force is from the impact with the tree which was acting on his
 5      body to go towards the steering wheel. There are a combination
 6      of two forces.[4]
```

In his deposition, Kumar circled the location of the header/A-pillar area that he contends struck Mr. Stovall's head during the crash:



Kumar explicitly disagreed with Newton's Third Law by trying to "generalize" the angle of the forces acting on Mr. Stovall's head:

---

[2] Kumar Depo., 6:16-7:12, attached as Exhibit B.
[3] *Id.* at 66:12-15.
[4] *Id.* at 65:24-66:6.

```
12  Q  The structure not only hit him on the left side of
13     his head, it hit him to the front in the left, correct?
14  A  That's right, because the side head rail buckled and
15     came towards him in the direction. That's right.
16  Q  So the force that the impact of his head with the
17     structure is going to push it in the opposite direction, so
18     it's going to push it to the right and a rearward, correct?
19  A  That's not true. Since the -- when the structure
20     deforms, it forms in three dimensions. It's coming down,
21     coming towards you, and the a-pillar collapse and coming here.
22     It's coming and hitting at an angle, if you look at the bend on
23     the sod roof header. It's coming and hitting at an angle
24     rather than where you're showing.
25     It's not a straight lateral impact. It's mostly
1      coming down and coming to three different directions to get hit
2      on your head.
3   Q  Do any of those three directions push his head
4      towards the steering wheel?
5   A  In general, yes.[5]
```

Kumar then pivoted to a conclusion that because Mr. Stovall was seated close to the steering wheel that somehow the rearward moving header/A-pillar caused his head move forward.[6] But then, later on in his deposition, Kumar acquiesced and agreed that the distance Mr. Stovall was from the steering wheel has no relationship to the direction of the force acting on Mr. Stovall's head as it was impacted by the rearward moving header.[7]

Although he agreed with the high school physics concept that the force vector from the header contacting Mr. Stovall's head can be broken down into the commonly known x, y, and z directional components,[8] Kumar then dug in to his "generalized" assessment of the resulting force:

```
1   Q   And you can break the impact -- you can break down
2       the impact of the header into Mr. Stovall's head, the force
3       that's being imparted to his head by the impact from the
4       header, into an X, Y, and Z component to re-create the
5       direction of that three-dimensional force, correct?
```

---

[5] *Id.* at 66:12-67:5 (emphasis added).
[6] *Id.* at 70:8-71:6.
[7] *Id.* at 71:7-12.
[8] *Id.* at 69:6-9.

> 6  A  **I don't need to. I need only the resulting force.**
> 7     You can breakdown anything you want all day sitting here and
> 8     breaking everything for no reason just for the sake of breaking
> 9     it down, but as a biomechanical scientist, I am interested in
> 10    what is the result of force acting on the front side header on
> 11    his head resulting in the serious head injury then how his body
> 12    was responding. That's what I was doing here.[9]

He then reluctantly discussed the critical x-component:

> 18 Q  And what is the X component?
> 19 A  X component should be that back to front or front to
> 20    back.
> 21 Q  Which is it?
> 22 A  So based on what I see here, the buckling effect is
> 23    from back to front -- back to front. Since I'm coming at an
> 24    angle, so then X -- excuse me.[10]

Next, after previously opining in his deposition that movement of the header was one of two forces causing Mr. Stovall to move forward into the steering wheel, Kumar contradicted himself and testified that there was nothing significant causing Stovall's forward movement other than the truck's impact with the tree:

> 7  Q  What is going to have caused his head to move
> 8     forward?
> 9  A  Nothing significantly because his forward movement
> 10    comes from the impact with the tree during the second impact.
> 11    Since we are kind of -- I mean, second part of the first
> 12    impact, the second crash pulse we are talking about.[11]

But Kumar continued to try to avoid focusing his analysis on whether any interaction by the cab structure with Mr. Stovall's head would cause forward movement:

> 2  Q  So you've given us two components.  You said downward
> 3     and sideways.
> 4  A  That's right.
> 5  Q  You haven't have mentioned forward or back. Do you
> 6     have an opinion that it moved forward or back or you just don't

---

[9] *Id.* at 72:1-12 (emphasis added).
[10] *Id.* at 74:18-25.
[11] *Id.* at 77:7-12.

```
 7      know?
 8   A  It came from the a-pillar -- the a-pillar came
 9      backwards. When it collapsed it came backwards.
10   Q  Front to back?
11   A  Front to back, the a-pillar.
12   Q  I thought we were talking about the side roof rail.
13   A  That's right. The side roof rail is attached to the
14      a-pillar. In terms of the general direction, you have to go
15      with the supporting structure, how the supporting structure is
16      moving compared to the b-pillar, so it's coming from front to
17      back.
18   Q  So by looking at -- by having -- by knowing in Mr.
19      Herbst testing that the a-pillar moved from front to back
20      because the side roof rail is attached to the a-pillar, the
21      side roof rail also must be generally moving from front to
22      back; is that fair?
23   A  In an isolated manner you're explaining. In a real
24      world, everything happens in three-dimensional.
25   Q  Right. But as we look at the three-dimensional
 1      component of front to back, the a-pillar and the side roof rail
 2      on the driver side were moving generally front to back?
 3   A  That's right.[12]
```

Kumar's methodology is patently flawed. He opined that the rearward moving header/A-pillar impacted the front of Mr. Stovall's head but pushed it forward toward the steering wheel. Newtonian physics makes this conclusion impossible.

If Kumar is permitted to offer these occupant kinematic opinions, every juror who hears his testimony will initially be baffled by how a header moving rearward and inward could cause Mr. Stovall's head to move forward. While some may ultimately reject his opinion because it simply makes no sense, other jurors may incorrectly accept Kumar's faux/junk science because he appears to be a well-credentialed and experienced expert. This dilemma is exactly why the United States Supreme Court developed the *Daubert* standard and further refined it through subsequent cases like *Kumho Tire*. Experts must employ "the same level of intellectual rigor" in the courtroom

---

[12] *Id.* at 89:5-90:3.

as outside of the courtroom, *Kumho Tire Co. v. Carmichael*, 119 S. Ct. 1167, 1176 (1999), and Kumar fails to do that here. Mr. Kumar's occupant kinematics opinion would not be tolerated in a high school physics class and similarly should not be admitted in a courtroom.

### C. Kumar's "Systems Approach" to Biomechanical Assessment Is an Unproven Methodology.

With respect to his assessment of whether any of Plaintiff's proposed alternative designs would have mitigated Mr. Stovall's fatal injuries, Kumar fails to assess whether any of the proposed individual alternative designs would have altered Mr. Stovall's outcome in this crash. Instead, Kumar broadly claims that he uses what he calls a "systems approach" to reach the conclusion that the implementation of all the proposed alternative designs would have eliminated Mr. Stovall's fatal injuries. But there is no support in the literature or among other recognized biomechanical engineers for this "systems approach" being an appropriate methodology for a biomechanical assessment of alternative designs.

Kumar agrees with the basics – as a biomechanical expert, he needs to understand how the alternative designs function:

```
21  Q  To know whether any of these alternative designs
22     would have made a difference in the Stovall crash, you have to
23     know how these alternative designs work in different accident
24     scenarios, correct?
25  A  That's right. That's what I explained to you all.
 1     These alternative designs, one of the components is couple the
 2     occupant to the seat and keep the head away from the impact
 3     structure. That's one principle.[13]

18  Q  But to do your opinions, you have to know under what
19     accident conditions that the seat would be pulled down,
20     correct, to be able to tell -- to testify in this case that
21     pulling the seat down would have made a difference in this
22     crash?
```

---

[13] *Id.* at 13:21-14-3.

8

> 23  A  That's right....[14]
>
> 25  Q  As a biomechanical engineer, you need details to
> 1       perform your assessment, correct?
> 2   A  In terms of the occupant restraint system, I need the
> 3       detail. But beyond that, whether it's called RollTek or any
> 4       other name or any terminology, that's more of a design engineer
> 5       and the name they learned from the marketing department, they
> 6       will leave it up to them.
> 7       I take input from Mr. Kennet to understand how the
> 8       vehicle -- I mean the truck -- was moving. And the design
> 9       engineers, they tell me the outcome of their design in terms of
> 10      occupant kinematics and then the force systems and so forth.
> 11      But beyond that, for any design aspects for the need to give
> 12      the details, I will leave it to the design engineers.[15]

But when it comes to explaining whether any one alternative design would have altered Mr. Stovall's injuries in the crash, Kumar demurs and retreats to the protection of his systems approach:

> 21 Q  And just again to make sure I've got this clear in my
> 22      head -- I don't want to beat a dead horse -- but you can't
> 23      pinpoint a single one of the alternatives that you can say just
> 24      if you guys would have done that, such as put RollTek in or
> 25      whatever it may be, that that would have prevent Mr. Stovall's
> 1       injuries here to his head?
> 2   A  That's right. I said **systems approach**, including all
> 3       these alternative components, which Volvo always proposes like
> 4       a three-leg approach where you talk about roof structure and
> 5       the restraint system and the passive restraint system. So all
> 6       those things as one system-level you can avoid the injury to
> 7       Mr. Stovall.[16]
>
> 7   Q  Under your systems approach that you've talked a lot
> 8       about today in terms of providing a biomechanical assessment
> 9       with respect to alternative designs, that systems approach
> 10      includes each component within the system, correct?
> 11 A  That's right.
> 12 Q  So you have to provide your biomechanical analysis
> 13      for each of those components, correct?

---

[14] *Id.* at 14:18-15-18.
[15] *Id.* at 20:25-21:12.
[16] *Id.* at 173:21-174:7.

> 14  A   Not necessarily. Since the accident involves a total
> 15      system, so we look at the total systems approach from a
> 16      biomechanical analysis, and separate -- the same engineer will
> 17      deal with the separate component analysis.[17]

Kumar's report, his deposition testimony, the materials in his case file, and the references in his report, all fail to show how this "systems approach" is an appropriate methodology for assessing alternative designs. The flaw in Kumar's methodology can be summarized in one question: Without knowing the contribution of each proposed alternative design for injury mitigation, how can Kumar properly assess the efficacy of the combination of all the designs?

Kumar's opinions should be excluded because his "systems approach" for assessing alternative designs has not been shown to be an acceptable methodology in the field of automotive biomechanics.

## IV.   CONCLUSION

By ignoring Newtonian physics and creating his own "systems approach" to assess alternative designs, Kumar fails to adhere to the methodology requirements of Federal Rule of Evidence 702. Accordingly, Kumar's opinions should be excluded.

Respectfully submitted on this 23rd day of December, 2021.

>                               Charles K. Reed (admitted *pro hac vice*)
>                               Email: Chuck.Reed@lewisbrisbois.com
>                               Franklin P. Brannen, Jr. (admitted *pro hac vice*)
>                               Email: Frank.Brannen@lewisbrisbois.com
>                               LEWIS BRISBOIS BISGAARD & SMITH LLP
>                               600 Peachtree Street NE
>                               Suite 4700
>                               Atlanta, GA 30309
>                               PHONE: 404-348-8585
>                               FAX: 404-467-8845
>
>                                           -and-

---

[17] *Id.* at 196:7-17.

Edwin L. Lowther, Jr. (81107)
Email: elowther@wlj.com
WRIGHT LINDSEY JENNINGS LLP
200 W. Capitol Ave., Suite 2300
Little Rock, Arkansas 72201
PHONE: 501-371-0808
FAX: 501-376-9442

Attorneys for Mack Trucks, Inc.