IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

BURRIS RICHARD STOVALL, Administrator
of the Estate of RICHARD JOSHUA STOVALL,
Deceased                                                                              PLAINTIFF

vs.                           CASE NO.: 4:16-cv-00713-JM

MACK TRUCKS, INC., and INDIANA MILLS
& MANUFACTURING, INC.                                                      DEFENDANTS

### MACK TRUCKS, INC.'S RESPONSE TO PLAINTIFF'S MOTION TO STRIKE EXPERT MICHELLE VOGLER FOR VIOLATIONS OF RULE 26

COMES NOW Defendant Mack Trucks, Inc. ("Mack"), by and through its undersigned counsel, and files this Response to Plaintiff's Motion to Strike Michelle Vogler for Violations of Rule 26, showing the Court as follows:

### I.   INTRODUCTION

Plaintiff's Motion to Strike should be denied because the report of Mack's expert witness, Dr. Michelle Vogler, complies with Rule 26, and any complaints Plaintiff has with her report should have been resolved before and/or during her deposition and not via this Motion filed after the deposition and on the eve of trial.  In addition, Dr. Vogler's expert opinions regarding Plaintiff's crashworthiness claims comply the methodology requirements of Rule 702.[1]

Plaintiff seeks to exclude the testimony of Dr. Vogler by claiming that she has failed to comply with Rule 26(a)(2)(B)(ii). Specifically, Plaintiff alleges that Dr. Vogler provided no citation or reference to the "industry testing" she used in reaching the opinions set forth in her report regarding crashworthiness of the vehicle, thus leaving Plaintiff to "merely speculate as to

---

[1] It is unclear why Plaintiff has included this Rule 702 argument in a motion titled "Rule 26," especially when Plaintiff has another Rule 702 motion against the same witness.

1

what industry testing standards he needs to look to" to evaluate Dr. Vogler's opinions. (ECF Doc. 285 at 4). Yet, Dr. Vogler provided all the industry testing standards she considered in her backup materials provided to Plaintiff prior to her deposition, in a clearly identified folder that corresponded to her report topics. Furthermore, Plaintiff questioned Dr. Vogler about the industry testing standards in her deposition and she identified the specific location of the standards within her produced file. Plaintiff deposed Dr. Vogler for approximately three hours and Plaintiff decided when to conclude her deposition. If Plaintiff was concerned he had not obtained a sufficient comprehension of Dr. Vogler's opinions and their bases he should have continued examining her until he had instead of choosing to file the instant motion.

Additionally, Plaintiff seeks to exclude the testimony of Dr. Vogler by claiming that her opinions on cab crashworthiness fail the standard set forth under Fed. R. Evid. 702 because she did not perform any physical testing relating to her opinions. (ECF Doc. 285 at 6-7). But Dr. Vogler did not need to perform physical testing because her opinions are based on scientific calculations of energy.

## II.     ARGUMENT AND CITATION TO AUTHORITY

### A. Legal Standard.

The purpose of Federal Rule 26(a)(2)(B) concerning expert reports is to allow the opposing party "to prepare for effective cross-examination and perhaps arrange for expert testimony from other witnesses." *Smith v. Tenet Healthsystem SL, Inc.*, 436 F.3d 879, 889 (8th Cir. 2006) (citing Fed. R. Civ. P. 26 advisory committee notes (1993 Amendments)); *see also Tactical Stop-Loss LLC et al., v. Travelers Cas. and Sur. Co. of America*, 2010 U.S. Dist. LEXIS 8304, 2010 WL 427779, at *1 (W.D. Mo. Feb. 2010). Even if a party fails to provide the information under Rule 26(a)(2)(B), the party presenting the expert witness can use the expert if the failure was harmless

or substantially justified. *Smith*, 436 F.3d at 889 (8th Cir. 2006); Fed. R. Civ. P. 37(c). To determine whether the failure to comply with one or more of Rule 26(a)(2)(B)'s requirements is harmless or substantially justified, the Court considers four factors: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Tactical Stop-Loss LLC* (quoting *Woodworker's Supply, Inc. v. Principal Mut. Life. Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999)).

Federal Rule of Evidence 702 governs the admissibility of expert testimony and has "three distinct but related requirements: (1) the evidence must be based on scientific, technical or other specialized knowledge that is useful to the finder of fact in deciding the ultimate issue of fact; (2) the witness must have sufficient expertise to assist the trier of fact; and (3) the evidence must be reliable or trustworthy." *Kudabeck v. Kroger Co.*, 338 F.3d 856, 859 (8th Cir. 2003).

**B. Any Failure of Dr. Vogler's Report To Satisfy Rule 26(a)(2)(B)(ii) Is Harmless as Demonstrated by the Bad Faith Timing of Plaintiff's Motion To Strike.**

Plaintiff has elected to wait until the eve of trial to suggest that Dr. Vogler's report fails to satisfy Rule 26(a)(2) requirements. Dr. Vogler's expert report was provided to Plaintiff on December 3, 2021, and Dr. Vogler was deposed by Plaintiff's counsel on January 7, 2022. During the approximately five-week time period between these dates, Plaintiff never asked Defendant to provide a revised report or otherwise sought clarification as to the standardized tests relied upon by Dr. Vogler. Plaintiff has repeatedly demonstrated throughout litigation of this case the ability to request additional information and documentation from Mack, but in this instance, Plaintiff "strategically" elected to not request clarification to what he contends is an alleged defect in Dr. Vogler's report.

Moreover, other courts have concluded that a party's failure to file a motion to compel regarding the sufficiency of an expert report precludes a belated motion to strike. *See Torbit v. Ruder Sys.*, 2001 U.S. Dist. LEXIS 26335, *12 (E.D. Mo. Sept. 24, 2001) (denying a motion to strike an expert witness based on a finding that the expert's failure to fully comply with Rule 26(a)(2)(B) was harmless where the party moving to strike the expert witness had the opportunity to file a Motion to Compel regarding the expert's list of documents and failed to do so).

Here, Plaintiff never complained about Dr. Vogler's alleged failure to comply with Federal Rule of Civil Procedure 26(a)(2)(B)(ii) until Plaintiff filed this Motion. Not only did Plaintiff fail to move the Court to compel clarification of her report, Plaintiff also failed to even make a phone call or send an email to Mack's counsel or make any other inquiry requesting clarification. Plaintiff's failure to take any action on this alleged noncompliance in the weeks he received Dr. Vogler's report prior to deposing her, shows that Plaintiff truly had no issue with the content of her report but is now trying to manufacture a controversy that never existed.

   C. **Any Failure of Dr. Vogler's Report To Satisfy Rule 26(a)(2)(B)(ii) is Harmless as the Industry Testing Relied Upon By Dr. Vogler Was Not a Surprise to Plaintiff.**

Plaintiff's claim that he was unaware of the industry standard tests referenced by Dr. Vogler is equally implausible, making any claim of error harmless. Plaintiff contends that "due to her inadequate report[,] Dr. Vogler did not provide Plaintiff's counsel the opportunity to properly question her at her deposition, where she likewise provided no basis for her expressed opinions." (ECF Doc. 285 at 3). However, Plaintiff blatantly ignores that Plaintiff's counsel explicitly discussed the standardized tests used by Dr. Vogler in the crashworthiness analysis of her report and marked the same as Exhibits 8, 9, and 10 in her deposition.[2] Dr. Vogler's reliance on the

---

[2] Attached as Exhibit A.

4

standardized testing can hardly be said to be a surprise. *See Smith*, 436 F.3d at 889 (holding that the trial court committed no error in allowing the testimony of a doctor who failed to disclose his reliance on an x-ray in his expert witness report because the doctor discussed his reliance on the x-rays during his deposition and the plaintiff was on notice of such reliance); *McDaniel v. Nat'l-Oil Well, Inc.*, 2007 U.S. Dist. LEXIS 27304, *4 (W.D. Ark. Apr. 12, 2007).

Specifically, Plaintiff's counsel presented the following line of questioning:

```
18   Q   Now, let's move to Exhibit Number 8.  And this is a
19       presentation that I have marked as coming from your
20       crashworthiness section of your file.  And if you could,
21       when it appears on your screen, identify this eight page
22       document for us?
23           (Deposition Exhibit No. 8 marked).
24   A   Yes, that's in my file.
25   Q   And what is this document?  Do you -- can you sort of
 1       summarize it for us?
 2   A   Yes.  It reflects the analysis that I refer to in my
 3       report where I compared the energies associated with
 4       various types of testing of cab structures to this
 5       particular accident.  So in the beginning part, there are
 6       some excerpts from materials that were produced by Mack.
 7       And then as we step through it, there were reference
 8       standards related to testing of cab structures.  And I
 9       provided summaries with what the associated test energies
10       are with those particular test criteria.  And then near
11       the end, the -- the last page is an analysis plotting up
12       the difference in the energies.
13   Q   Okay.  Let me run through these eight pages very quickly.
14       Page one has a Mack Trucks' test report from 1977, is
15       that correct, or at least excerpts of it?
16   A   Yes, that's correct.
17   Q   On page two, again, are some excerpts from testing
18       produced by Mack.  This particular testing was in 1981?
19   A   That's correct.
20   Q   And page number three of the presentation is Mack's
21       engineering standards that were reaffirmed, according to
22       your note, as of May of 2007?
23   A   That's correct.
24   Q   Page four of eight is something called ECE R29-03.  Not,
25       of course, the entire regulation, but a reference to it
 1       with some sort of demonstrative chart, is that fair
```

```
 2      enough?
 3   A  That's correct.  That's an excerpt from the standard.
 4   Q  And then page five of eight is an SAE recommended
 5      practice for cab roof strength, SAE J2422, correct?
 6   A  That's correct.
 7   Q  Page six of eight is SAE recommended practice for cab
 8      over engine frontal strength evaluation, SAE J2420?
 9   A  That's correct.
10   Q  Page seven of eight is a reference to the subject 2013
11      Mack MRU-613 weight?
12   A  That's correct.[3]
```

Plaintiff's counsel further discussed the standard industry testing relied upon by Dr. Vogler and acknowledged that he had received the subject materials prior to her deposition.

```
24   Q  Okay.  Making progress.  Almost done.  That takes us to
25      Exhibit Number 10, which is -- I'm not going to
 1      necessarily put it up on the screen for you because
 2      really **this is a file folder from the materials I**
 3      **downloaded, which is the file folder that references**
 4      **crashworthiness reference materials.**  And let me see if I
 5      can get over here real quick.  I might be able to help
 6      you make sure that I'm -- that I got everything you
 7      wanted to be in here.
 8            (Deposition Exhibit No. 10 marked).
 9   Q  What we are looking at is the downloaded index A through
10      J that I received in the zip file folder.  Do you
11      generally recognize this?
12   A  Yes, that agrees with what I have for my back-up
13      materials that were provided.
14   Q  Okay.  Do you see that I have highlighted H, additional
15      response to experts?
16   A  Yes.
17   Q  **Now, above that there is a design and crashworthiness**
18      **file.  And within that file folder is a file folder**
19      **called reference material.**  Is that what you can see? I
20      have no idea.
21   A  Yes, I can see that.  **And that is exactly as it's**
22      **organized in my file.  And those documents in there are**
23      **the back-up to the different testing criteria that I**
24      **reference in the Power Point that you -- I believe you**
25      **marked as Exhibit 8.**[4]
```

---

[3] Vogler Depo., 11:18-13:12 (emphasis added) (attached as Exhibit B).
[4] *Id.* at 13:24-14:25 (emphasis added).

6

Furthermore, Plaintiff cannot be said to have been "ambushed" with any information at Dr. Vogler's deposition as his own expert, Kelly Kennett, explicitly cites to these same testing standards in his report.[5] *Cf. Lyons v. Leatt Corp.*, 322 F.R.D. 327, 334 (N.D. Ind. 2017). Moreover, Dr. Vogler testified about her reliance on the standardized testing she used to conduct her study, and Plaintiff was clearly on notice of her reliance upon these standards as indicated by Plaintiff's introduction of Exhibits 8-10 at the deposition. Plaintiff's counsel, at his own peril, elected not to further inquire about the standardized testing to create the subject issue. This level of gamesmanship should not be rewarded. Therefore, any failure of Dr. Vogler's report to comply with Rule 26(a)(2)(B)(ii) is harmless, and Mack should be allowed to introduce the expert testimony of Dr. Vogler at trial.

### D. Dr. Vogler's Calculations of Energy Levels Satisfy the Methodology Requirements of Rule 702 and Do Not Require Physical Testing

Dr. Vogler's crashworthiness opinions satisfy Rule 702 because they are based on her calculations of the immense amount of energy involved in the Stovall crash, using both her reconstruction of the accident and even Plaintiff's reconstruction. Rule 702 does not always require an expert to undertake physical testing. Instead, the rule requires the expert to undertake a scientifically appropriate methodology to reach her opinions.

Here, Dr. Vogler expressed the following opinions regarding the crashworthiness of the subject vehicle:

---

[5] "When the subject vehicle was manufactured, there were three significant standardized test procedures for cab structure integrity. These three test procedures are the "Swedish Impact Tests," The United Nations Economic Commission for Europe Regulation 29 (ECE R29) and the Society of Automotive Engineers (SAE) Recommended Practice J24222." Herbst Expert Report at 28, attached as Exhibit C.

- "The characteristics of the subject cab deformation indicated that it performed as desired when trying to manage the applied energy levels by distributing the forces throughout the roof structure. There is no indication that a change to any particular component design, manufacturing process or type of industry evaluation testing used would have resulted in a structure that would perform."[6]
- "Mr. Herbst's testing of the production and reinforced alternate design cabs does not reflect the energy severity experienced by the Mack truck in the subject crash, and his findings do not reflect how his proposed modifications would have performed in the subject crash."[7]

Plaintiff's suggestion that "Dr. Vogler merely formulated a hypothesis and did nothing further to either prove or disprove [the] same" is wholly misguided and deliberately ignores the calculations and analysis performed by Dr. Vogler that guided her opinions regarding the crashworthiness of the subject vehicle. Dr. Vogler undertook a study wherein she compared the energy levels associated with the various standardized cab testing configurations, discussed above, that are used to assess the structural performance of cab roofs with the actual conditions experienced in the subject accident.[8] Taking both her own accident reconstruction findings and the accident reconstruction findings of Plaintiff's expert Kelly Kennett, Dr. Vogler found that the subject crash, given its catastrophic nature, "involved a level of energy substantially higher than any industry testing configuration."[9] Therefore, she opined that "results from such testing would not reflect how the subject cab design, or proposed alternate designs, would have performed under the subject crash conditions."[10]

Plaintiff's reliance on *Schipp v. Gen. Motors Corp.*, 443 F. Supp. 2d 1023, 1029 (E.D. Ark. 2006) is wholly misplaced. In *Schipp*, the testimony of two experts was excluded because neither expert performed calculations to show that their hypotheses were mathematically possible. *Id.* at

---

[6] Vogler Expert Report at 23, attached as Exhibit D.
[7] *Id.*
[8] *Id.* at 21.
[9] *Id.*
[10] *Id.*

1030-31. Here, it is clear that Dr. Vogler performed relevant calculations to support her hypothesis that given the accident severity no change in design would have resulted in the cab structure performing substantially differently in the Stovall crash.

Dr. Vogler's scientific analysis shows that Plaintiff's expert Brian Herbst's physical testing is pointless because of the severe nature of the subject accident. Herbst's testing involved an amount of energy that is 10 to 20 times less than the energy involved in the Stovall crash. Dr. Vogler reached this conclusion by relying on her own accident reconstruction and even Plaintiff's accident reconstruction opinions. The fact that Dr. Vogler did not perform her own physical test does not negate the fact that she utilized sound scientific methods in reaching her ultimate conclusions regarding the amount of energy involved in the various events. Therefore, Dr. Vogler's opinions on cab crashworthiness do not fail the standard set forth in Fed. R. Evid. 702.

### III.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Strike Mack's Expert Michelle Vogler for Violations of Rule 26 (ECF Doc. 285) should be denied.

Respectfully submitted on this 14th day of March, 2022.

Charles K. Reed (admitted *pro hac vice*)
Email: Chuck.Reed@lewisbrisbois.com
Franklin P. Brannen, Jr. (admitted *pro hac vice*)
Email: Frank.Brannen@lewisbrisbois.com
LEWIS BRISBOIS BISGAARD & SMITH LLP
600 Peachtree Street NE
Suite 4700
Atlanta, GA 30309
PHONE: 404-348-8585
FAX: 404-467-8845

-and-

          Edwin L. Lowther, Jr. (81107)
          Email: elowther@wlj.com
          WRIGHT LINDSEY JENNINGS LLP
          200 W. Capitol Ave., Suite 2300
          Little Rock, Arkansas 72201
          PHONE: 501-371-0808
          FAX: 501-376-9442

          Attorneys for Mack Trucks, Inc.